UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ADVANCED BIOTECH, LLC, et al.,

Plaintiffs,

v.

BIOWORLD USA, INC., et al.,

Defendants.

No. 1:19-cv-01215-NONE-SKO

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

(Doc. No. 8)

Plaintiffs Advanced BioTech, LLC ("Advanced BioTech") and Dale Barnes ("Mr. Barnes") filed this lawsuit against defendants BioWorld USA, Inc. ("BioWorld USA"), Donald Damschen ("Damschen"), and Diane Barnes ("Ms. Barnes") alleging trade secret misappropriation under federal and state law. (Doc. No. 1 ("Complaint").) Pending before the court is defendants' motion to dismiss the complaint for failure to state a claim. (Doc. No. 8.) For the reasons discussed below, defendants' motion will be denied.

**BACKGROUND**

In 1989, Mr. Barnes formed two business entities: Advanced BioTech and BioWorld Products, LLC ("BioWorld Products").[1] (Compl. ¶ 13.) Advanced BioTech developed a

[1] For purposes of this order, "Advanced BioTech" and "BioWorld Products" refer to the companies themselves and any of their predecessors and/or successors. Defendants make much of the business reorganizations of both entities, but that is irrelevant to resolution of the pending motion to dismiss for reasons discussed in detail below.

chemically formulated product, called "MultiFIX," which "provides the proper compounds and substrates required by soil microbes and plants to grow high quality crops with enhanced nutrient value." (*Id.*) Using and building on MultiFIX, BioWorld Products developed other formulations: "BioWorld Waste & Odor Treatment, BioWorld Algae Treatment, BioWorld Bioremediation and BioWorld Hydrocarbon Treatment, BioWorld Odor Neutralizer (BON), Bioremediation Odor Control Technology and other formulations." (*Id.* ¶ 14.) These latter products "assist[] microbes' ability to reproduce and thrive in [a] given environmental challenge," and have "been successfully used in agricultural and municipal wastewater biodegradation, industrial, and commercial hydrocarbon bioremediation, algae cleanup in farm irrigation ponds, governmental irrigation canals, private lakes, odor neutralization of industrial-type odors," in addition to other uses. (*Id.*) Plaintiffs also developed "The Pet Beverage" formulation. (*Id.*) Together, these "product formulations" are "confidential, proprietary, and trade secret information belonging to Advanced BioTech and/or Mr. Barnes." (*Id.* ¶ 17.)

In addition to the product formulas, Advanced BioTech's customer-related information, containing strategic data necessary to navigate the competitive marketplace and which took years to develop through business goodwill, also constitutes confidential, proprietary, and trade secret information. (*Id.* ¶¶ 18, 20.)

Enter defendants Damschen and Ms. Barnes. From about 1994 to 2000, Damschen was employed in leadership roles at Advanced BioTech. (*Id.* ¶ 28.) In those roles, he helped develop business relationships and had access to Advanced BioTech's product formulations. (*Id.* ¶ 29.) In 2005, Damschen was named vice president of BioWorld Products. (*Id.* ¶ 31.) By 2013, Ms. Barnes was as a bookkeeper for Advanced BioTech and owned a stake in BioWorld Products, "which was [reorganized in 2013] so that Ms. Barnes could offer to sell . . . Advanced BioTech products to federal government entities as a woman-owned small business." (*Id.* ¶ 23.) In June 2013, and again in November 2013, Advanced BioTech entered into a "Partnership Agreement" with BioWorld Products, whereby the former "was charged with generating sales, corresponding with customers, and managing sales agents, among other things" and the latter "would manage inventory and maintain an accounting of sales generated by Advanced BioTech." (*Id.* ¶ 24.) As a

result, Ms. Barnes and BioWorld Products had access to Advanced BioTech's confidential, proprietary, and trade secret information. (*Id.* ¶¶ 22, 25.) In his role with BioWorld Products and as a result of the Partnership Agreement, Damschen also had access to confidential, proprietary, and trade secret information belonging Advanced BioTech. (*Id.* ¶ 32.) Damschen served in his role at BioWorld Products until approximately August 31, 2016. (*Id.* ¶ 31.)

While still employed at BioWorld Products, around September 2014, Damschen created a new company, defendant BioWorld USA, for "the express purpose of launching a competitor of Advanced BioTech." (*Id.* ¶ 33.) Damschen left BioWorld Products two years later, on about September 1, 2016. (*See id.* ¶ 31.) At about the same time, BioWorld Products entered into an "Asset Purchase Agreement" with BioWorld USA, the entity created by Damschen. (*Id.* ¶ 34.) The "'Asset Purchase Agreement' and its attached 'Bill of Sale' purported to transfer" BioWorld Products' "book of business consisting of customer contacts and lists, goodwill, trademark rights, patents, product formulations, and computer software and hardware, among others, to BioWorld[.]" (*Id.* ¶ 35.) According to plaintiffs, BioWorld USA "succeeded in steering" away "multiple Advanced BioTech clients," which resulted in "Advanced BioTech losing substantial sales and market goodwill in an amount according to proof at trial." (*Id.* ¶ 47.)

Plaintiffs filed this action alleging that defendants violated the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.*, and the California Uniform Trade Secret Act ("CUTSA"), California Civil Code §§ 3426 *et seq.* (*Id.* ¶¶ 48–56, 57–65.) In addition to pursuing compensatory damages, plaintiffs seek the award of punitive damages against defendants. (*Id.* at 13–14.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Federal Rule of Civil Procedure 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## DISCUSSION

Defendants move to dismiss the complaint in its entirety and with prejudice on the grounds that it fails to allege elements of the DTSA and CUTSA. (Doc. No. 8 at 2–3.) Defendants also request that the court take judicial notice of various documents. (Doc. No. 8-1 at 10–13.) The court first discusses the various documents attached by the parties to their submissions and then will turn to the merits of the pending motion to dismiss.

### A. The Court Will Consider Some Documents, But Not Others

In support of their motion to dismiss, defendants have submitted various partnership agreements that are referenced in the complaint. (Doc. Nos 8-1 at 10–11; *see* 8-3 at 5, 7.) Plaintiffs concede that the partnership agreements are incorporated by reference in the complaint, and therefore may be considered by the court. (Doc. No. 9 at 8–9.) Plaintiffs also ask the court to

incorporate and consider a separate agreement between some of the parties, titled "Dissolution of Partnership," because it is referenced in the complaint as well. (*Id.*; *see* Doc. No. 10-1 at 2.) Defendants do not take issue with this document. (*See passim* Doc. No. 12.) Therefore, the court will consider this material in deciding the pending motion to dismiss. *See Lee*, 250 F.3d at 688–89.

Defendants request that the court take judicial notice of various documents filed with the California Secretary of State, in addition to a bankruptcy docket allegedly involving Advanced BioTech's predecessor company. (Doc. Nos. 8-1 at 11–13; *see* 8-2 at 8, 10–12.) Rule 201 of the Federal Rules of Evidence provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." The court will take judicial notice of the existence of these documents because they satisfy the requirements of Rule 201. *See Retired Emps. Ass'n of Orange Cty., Inc. v. Cty. of Orange*, 632 F. Supp. 2d 983, 985 (C.D. Cal. 2009) (taking judicial notice of filings in a bankruptcy case); *L'Garde, Inc. v. Raytheon Space and Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (taking judicial notice of documents filed with the California Secretary of State). In doing so, the court recognizes the limitation that the judicially notice fact in each instance is the existence of a document, "not . . . the truth of the matters asserted therein." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp.3d 1075, 1089, n.6 (E.D. Cal. 2019), *aff'd* 818 Fed. Appx. 694 (9th Cir. June 26, 2020).

Finally, defendants attach two other documents in support of the pending motion to dismiss: a trademark registration certificate issued to Ms. Barnes in 1992 and a fictitious business name filing made with Tulare County in 1996. (Doc. No. 8-3 at 9, 11.) Defendants do not explain the relevance of these documents or why they are helpful to the court in adjudicating the pending motion to dismiss. (*See passim* Doc. No. 8-1 at 12–13.) Yet, "a party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice." *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, at 516 (E.D. Cal. 2011). A court may decline to take judicial notice of irrelevant documents. *See Santa Monica*

*Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n.7 (9th Cir. 200). Because defendants have failed to carry their burden of demonstrating that the trademark registration and fictitious business name documents satisfy the requirements of Rule 201, and also fail to explain their relevancy to the court's consideration of the pending motion, the court declines to take judicial notice of these documents.

**B. The Complaint States a Claim Under Federal and State Law**

"To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018). Defendants argue that dismissal of the DTSA and CUTSA claims is appropriate here because plaintiffs' complaint fails to allege the elements of "trade secret" and "misappropriation." For the reasons explained below, the court concludes that neither of these arguments requires dismissal at this stage.

1. Trade Secrets: Product Formulas and Customer-Related Information

Defendants argue that the complaint fails to allege facts satisfying the statutory definition of "trade secret." (Doc. No. 8-1 at 14–16.) The definition of a "trade secret" under the DTSA and CUTSA are nearly identical. Under the DTSA, a "trade secret" is

> financial, business, scientific, technical, economic, or engineering information . . . if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Under the CUTSA, a "trade secret" is

> information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). In defining the trade secret, a plaintiff must "describe the subject

matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Alta Devices,* 343 F. Supp. 3d at 881.

Here, plaintiffs plausibly allege that their product formulas and customer-related information are "trade secrets" under the DTSA and CUTSA. (Compl. ¶¶ 16–20.) First, plaintiffs plausibly allege a trade secret in the formulation of Advanced BioTech's MultiFIX, which is "a fertilizer formulation containing a mixture of plant nutrients combined with other ingredients according to a formula." (*Id.* ¶ 16 n.1.) Plaintiffs further allege a trade secret in the formulation of "BioWorld Waste & Odor Treatment, BioWorld Algae Treatment, BioWorld Bioremediation and BioWorld Hydrocarbon Treatment, BioWorld Odor Neutralizer (BON), Bioremediation Odor Control Technology and other formulations," including "The Pet Beverage" formulation. (*Id.* ¶ 14.) In addition to product formulas, plaintiffs plausibly allege a trade secret in customer-related information. More specifically, plaintiffs allege that Advanced BioTech "has cultivated an extensive list of customers who use or have used its products, as well as information specific to those customers' business operations, including, but not limited to, customer activity data, product preferences, pricing information, business and marketing plans, and strategies." (*Id.* ¶ 18.) The complaint alleges this customer-related information "accumulated by Advanced BioTech over time enhances, and has enhanced, its ability to earn new and repeat business in a competitive marketplace." (*Id.* ¶ 19.) Courts have concluded that both product formulas and customer-related information can be "trade secrets." *See Alta Devices*, 343 F. Supp. 3d at 882 (recognizing "formulas[] and other technical information" as a category of trade secrets under the DTSA and CUTSA); *Brocade Commc'n Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1215 (N.D. Cal. 2012) (recognizing "customer-related information, including customer lists" as a category of trade secrets under the CUTSA).

Second, plaintiffs' complaint alleges that the trade secrets in question derive value "from not being generally known to, and not being readily ascertainable through proper means by the public," supported by other allegations, such as the fact that Advanced BioTech operates in a

competitive marketplace where this information is presumably highly valuable to market participants. (Compl. ¶¶ 50, 59.) In other words, the complaint plausibly alleges here that the trade secrets "derive[] independent economic value . . . from not being generally known to [or] readily ascertainable . . . by[] another person who can obtain economic value from the . . . information." *See* § 1839(3); § 3426.1(d). Contrary to defendants' argument, the applicable pleading standard does not require that a plaintiff plead that the trade secret is "not known to a person who can profit" from it. (Doc. No. 8-1 at 16.)

Third, and relatedly, plaintiffs allege they took "reasonable measures" to ensure the secrecy of their trade secrets. *See* § 1839(3); § 3426.1(d). In this regard, the complaint alleges these measures included

> storing that information on private, password-protected server locations that are set apart from the Internet by a firewall; storing printed and hardcopy materials containing confidential, proprietary, and trade secret information in a locked file cabinet to which only selected employees have keys; limiting employee access so that only those who have a work-related reason for using Advanced BioTech's confidential, proprietary, and trade secret information may do so; and placing a premium on the work ethic of its employees and executives who are expected to maintain strict confidentiality over the company's proprietary formulations, customer lists, business practices, methods, insights, intellectual property, and other confidential information.

(Compl. ¶ 21.) This sufficiently alleges "reasonable measures to keep [the] information secret[.]" § 1839(3); *see Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003) (explaining that this factor is "ordinarily a question of fact for the jury" and "only in an extreme case" may it be resolved as a matter of law) (citation omitted).

Last, defendants argue Advanced BioTech is not the "owner"[2] of the alleged trade secrets. (Doc. No. 8-1 at 14–15.) However, throughout the complaint the product formulas and customer-related information at issue are referred to as the property of Advanced BioTech. (*E.g.*, Compl. ¶ 20 ("The confidential, proprietary, and trade secret nature of *Advanced BioTech's product*

---

[2] Under the DTSA, "owner" is defined as "the person or entity in whom or in which rightful legal or equitable title, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4). The CUTSA does not provide a statutory definition for "owner."

*formulations and customer information* . . .") (emphasis added).) Nevertheless, in support of their argument that plaintiffs are not the owners of the trade secrets, defendants rely on a bankruptcy case from 1999 involving Advanced BioTech. (*See* Doc. No. 8-2 at 5–6.) Defendants do not attach to their motion any filings from that case in particular, but instead provide only a screenshot of the electronic case filing docket. (*Id.*) On this basis, defendants argue that neither Mr. Barnes nor Advanced BioTech own the trade secrets at issue because when Advanced BioTech filed for bankruptcy in 1999, it allegedly relinquished any ownership interest in the trade secrets to the trustee of the bankruptcy estate. (Doc. No. 8-1 at 14.) In other words, defendants do not actually contest that the complaint fails to allege an ownership interest. Instead, defendants go beyond the complaint and attempt to rebut the veracity of its allegations. As noted above, the court will judicially notice the fact that a bankruptcy case was pending in 1999 but will not judicially notice any other fact on this record—certainly nothing pertaining to the merits of an ownership interest in trade secrets. *See Jarreau-Griffin v. City of Vallejo*, 531 B.R. 829, 830 (E.D. Cal. 2015) (holding courts notice the "existence of a document, not the truth of the matters asserted in the documents"); *see also Color Switch LLC*, 377 F. Supp.3d at 1089 n.6. Furthermore, despite defendants' claims to the contrary, nothing in the judicially noticed document is actually "inconsistent" with the allegations of plaintiffs' complaint in this action. (Doc. No. 8-1 at 15) (citing *Ali v. Humana, Inc.*, No. 1:12–cv–00509–AWI, 2012 WL 4829313, at *3 (E.D. Cal. Oct. 12, 2012) (applying "doctrine of truthful pleading" in a breach of contract action where there were "clearly material differences" between the complaint and contract, and the attached copy of the contract was "precisely the instrument upon which" the claim rested).) Defendants' argument is better suited for presentation by way of motion for summary judgment, not through a Rule 12(b)(6) motion to dismiss.

For these reasons, the court concludes that plaintiffs' complaint plausibly alleges that plaintiffs owned "trade secrets" under the DTSA and CUTSA.

2. <u>Misappropriation by Damschen, Ms. Barnes, and BioWorld USA</u>

Next, defendants argue the complaint fails to allege that each of them "misappropriated" trade secrets. (Doc. No. 8-1 at 16–17.) Under the DTSA and CUTSA, "misappropriation" means

either: the "(A) acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or" as applicable here, the

> (B) disclosure or use of a trade secret of another without express or implied consent who . . . (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]

18 U.S.C. § 1839(5); *see also* Cal. Civ. Code § 3426.1(b) (using nearly identical language). The main issue for purposes of resolving the pending motion to dismiss in this regard is whether defendants had a duty to maintain the secrecy of Advanced BioTech's trade secrets.

Generally, "the question of whether there is a duty to maintain secrecy in trade secret misappropriation cases is a highly fact-specific inquiry." *Sleekez, LLC v. Horton*, CV 16–09–BLG–SPW–TJC, 2017 WL 1906957, *5 (D. Mont. Apr. 21, 2017) (analyzing the DTSA). While a confidential relationship cannot be created unilaterally, "no particular form of notice is required; the question raised is whether the recipient of the information knew or should have known that the information was a trade secret and the disclosure was made in confidence." *Id.* (quoting *Phillips v. Frey*, 20 F.3d 623, 632 (5th Cir. 1994)). In the employee-employer context, a duty to maintain information secret may arise from a confidentiality agreement. *See, e.g.*, *1-800 Remodel, Inc. v. Bodor*, No. CV 18-472-DMG, 2018 WL 6340759, *5 (C.D. Cal. Oct. 17, 2018). But the absence of a confidentiality agreement is not dispositive on the question of whether a duty to maintain secrecy existed. *Sleekez*, 2017 WL 1906957, at *5; *see also Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1201 (S.D. Cal. 2008) (denying a motion for summary judgment and allowing the case to proceed to trial even though some employees failed to sign confidentiality agreements). Instead, a company may undertake "other precautions to keep its information secret, such as verbally telling its clients and employees that the information was confidential or limiting access to information on a 'need to know' basis." *Sleekez*, 2017 WL 1906957, at *5. Moreover, "a duty to maintain confidentiality can be based on a close personal relationship." *Id.*

Here, plaintiffs plausibly allege that defendants Damschen and Ms. Barnes had a duty to maintain the secrecy of Advanced BioTech's information. The complaint alleges that Damschen and Ms. Barnes acquired trade secrets—specifically product formulas and customer-related information—when they were employed by Advanced BioTech and BioWorld Products. (Compl. ¶¶ 22, 23, 28–29, 31.) Damschen worked in leadership roles at these entities for over 16 years, while Ms. Barnes owned a part of BioWorld Products. (*Id.* ¶¶ 23, 28, 31.) On this basis, it is reasonable to infer from the allegations of the complaint that Damschen and Ms. Barnes knew of the competitiveness of the market in which Advanced BioTech was operating within, and also recognized the value in keeping the trade secret information confidential, given the measures that Advanced BioTech had undertaken to ensure its secrecy. (*See id.* ¶¶ 19, 21.) Nonetheless, BioWorld Products sold its assets—which included Advanced BioTech's trade secrets—to BioWorld USA, an entity which was created to compete in the marketplace against Advanced BioTech. (*Id.* ¶¶ 33–36.) The complaint alleges that the "sale" took place the day after Damschen ceased working at BioWorld Products and the same day BioWorld USA was incorporated. (*Id.* ¶¶ 31, 34.) Based on these allegations, and construing all facts in a light most favorable to plaintiffs, the court concludes that at the time Damschen and Ms. Barnes used Advanced BioTech's trade secrets, they "had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret[.]" *See* § 1839(5); *Sleekez*, 2017 WL 1906957, at *5.

Furthermore, the complaint alleges misappropriation against defendant BioWorld USA. Courts distinguish between "direct" and "indirect" misappropriation claims, the latter of which occurs when a trade secret is obtained indirectly "from someone other than plaintiff." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020). To state a claim for indirect misappropriation, plaintiffs must allege that defendants, *inter alia*, "had reason to know that the disclosing party . . . was breaching a duty of confidentiality by disclosing it." *Id.* (citation omitted). Given that plaintiffs' complaint alleges that BioWorld USA was incorporated to compete with Advanced BioTech, and it also appears to have been fully controlled by Damschen,

the complaint plausibly alleges that BioWorld USA "had reason to know that [Damschen] . . . was breaching a duty of confidentiality by disclosing" the trade secrets. *See id.*

Once again, defendants essentially attempt to convert their motion to dismiss into a motion for summary judgment by asking that the court find, in fact, that there was no duty of secrecy on the part of Damschen or Ms. Barnes because the Partnership Agreements did not include a confidentiality provision. (Doc. Nos. 8-1 at 17 (arguing as to Ms. Barnes); 12 at 9 (arguing as to Damschen).) It is true that the complaint does not allege—nor do the Partnership Agreements appear to contain—the existence of a confidentiality agreement signed by Damschen or Ms. Barnes. (*See passim* Doc. Nos. 1; 8-3 at 5, 7.) However, as noted above, the existence of a confidentiality agreement is not dispositive, and the complaint alleges other circumstances giving rise to a duty of secrecy on the part of both Damschen and Ms. Barnes. *Sleekez*, 2017 WL 1906957, at *5 (explaining a duty can rise from several circumstances, including a "close personal relationship"). Indeed, the pending motion to dismiss goes a step further and alleges that Damschen "signed no agreement regarding trade secrets[.]" (Doc. No. 8-1 at 16–17.) Not only is this argument improper on a motion to dismiss because discovery will reveal whether defendant Damschen did or did not sign a confidentiality agreement—it also misses the mark with respect to the governing law.

Accordingly, the court concludes that plaintiffs' complaint plausibly alleges that defendants BioWorld USA, Damschen, and Ms. Barnes all "misappropriated" trade secrets.

3. <u>Harm to Plaintiffs</u>

Finally, the complaint alleges defendants, through their misappropriation, have "steer[ed]" multiple clients away from Advanced BioTech, which has resulted in Advanced BioTech "losing substantial sales and market goodwill." (Compl. ¶ 47.) In addition to past harm, the complaint alleges plaintiffs "continue to suffer[] damages" because BioWorld is still misappropriating the trade secrets. (*Id.* ¶¶ 52–53, 61–62.) Defendants do not contest that plaintiffs' allegations are sufficient to satisfy the third and final element of trade secret misappropriation claim.

Therefore, the court also finds that plaintiffs have plausibly alleged claims under the DTSA and CUTSA against defendants.

**CONCLUSION**

For all of the reasons explained above, defendants' motion to dismiss (Doc. No. 8) is denied in its entirety.

IT IS SO ORDERED.

Dated: **September 28, 2020**

UNITED STATES DISTRICT JUDGE