Peter Sean Bradley, CA Bar #109258
7045 N. Fruit Avenue
Fresno, CA  93711
Telephone: (559) 431-3142
Facsimile: (559) 436-1135
Petersean@AOL.Com

Attorneys for Counterclaim-Plaintiff BIOWORLD USA, INC.,

**(SPACE BELOW FOR FILING STAMP ONLY)**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ADVANCED BIOTECH, LLC, a California Limited Liability Company, and DALE BARNES, a California individual,<br><br>Plaintiff,<br><br>v.<br><br>BIOWORLD USA, INC., a California corporation; DONALD DAMSCHEN, a California individual, and DIANE BARNES, a California individual,<br><br>Defendants.<br>_____<br>BIOWORLD USA, INC., a California corporation,<br>         Counterclaim-Plaintiff<br><br>v.<br><br>ADVANCED BIOTECH, LLC, a California Limited Liability Company, and DALE BARNES, a California individual,<br><br>Counterclaim-Defendant | Case No.: 1:19-cv-01215-NONE-SKO<br><br>**BIOWORLD USA, INC.'S FIRST AMENDED COUNTERCLAIM**<br><br>**JURY TRIAL DEMANDED** |

Counterclaim-Plaintiff BIOWORLD USA, INC., a California corporation ("BWUSA") alleges as follows for this Counterclaim against Counterclaim-Defendants ADVANCED BIOTECH, LLC, a California Limited Liability Company, and DALE BARNES, a California individual, (collectively "ABTech.")

## JURISDICTION AND VENUE

1. This is a civil action arising as a counterclaim from a pending civil action filed in the Federal District Court for the Eastern District of California bearing the title and case number shown above. The original civil action claimed federal jurisdiction on the basis of Federal Question jurisdiction.

2. The court has jurisdiction over this counterclaim pursuant to Supplemental Jurisdiction as found in 28 U.S. C. § 1367.

3. Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§1391(b) and 1391(c).

## PARTIES

4. BWUSA is a business entity organized under the laws of the State of California with its principle place of business in Visalia, California.

5. BWUSA is informed and believes and alleges thereon that Advanced BioTech, LLC is a business entity organized under the laws of the State of California with its principle place of business in Visalia California and that Dale Barnes is a resident of Visalia, California.

## BACKGROUND ALLEGATIONS

6. Dale ("Dale") and Diane ("Diane") Barnes were a married couple living in Oklahoma in the 1980's. Sometime before 1988, Dale Barnes took a sales position with a Kansas company to sell NFIX, an agricultural product. This Kansas company was sold to Biofix Holding, Inc., a Texas based company. The Kansas company and Biofix had the NFIX product manufactured by a different company in Texas. This other company held the manufacturing process, ingredients, and product formulation as confidential, proprietary and trade secret information. Biofix forfeited existence as a Texas corporation in

December 1989. With the manufacturer of NFIX having product in inventory, Dale paid the manufacturer to acquire the available product for the express purpose of selling it in California.

7. Sometime in 1988, Dale left his family behind in Oklahoma, moved to California and started Western Biotech to sell N-FIX. Dale changed the name of N-FIX to Multifix. The manufacturing process, ingredients and product formulation remain proprietary information with the manufacturer/formulator of NFIX; Multifix was essentially a copycat product of NFIX.

8. Sometime in 1989, the rest of the family joined Dale in California. Dale changed his company name and incorporated Advanced Biotech Products, Inc.

9. Diane started BioWorld Products in approximately 1991 as its sole owner. Diane was involved in all aspects of BioWorld Products' operation including inventory, distribution, accounting and management. Although her work during the school year was part-time, in the summer she worked full-time. On September 16, 1991, Diane filed a Fictitious Business Name Statement in Tulare County for BioWorld Product naming herself as owner and sole proprietor.

10. Advanced Biotech Products was set up to sell Multifix, an agricultural product and BioWorld Products was set up to sell environmental products. The product formulations for Multifix and Liquid Optimizer, which Dale Barnes alleged to have personally developed existed before the formation of Advanced Biotech Products, Inc and BioWorld Products. Advanced Biotech LLC does not manufacture its products but obtains products from one or more suppliers. Advanced Biotech LLC does product blending, packaging, labeling, and shipping.

11. From and after 1991, the BioWorld Products trademark was continuously used in commerce by the following business entities: Dianne Barnes dba

BioWorld Product, BioWorld Products, LLC, BioWorld Products, Inc. and BioWorld USA, Inc.

12. In 1992, Diane Barnes obtained a California Trademark for "BioWorld Products."

13. On January 20, 1998, Articles of Organization were filed to reorganize the former sole proprietorship "BioWorld Products" into an LLC named "BioWorld Products LLC" with myself as sole owner and manager.

14. In 2003, BioWorld Products LLC obtained a California Trademark for BioWorld Products.

15. As part of its continuing sales and marketing, on November 24, 2008 BioWorld Products, LLC received USEPA approval of BioWorld Bioremediation Hydrocarbon Treatment. On January 20, 2009, BioWorld Products received a State of California license for its oil spill cleanup agent BioWorld Hydrocarbon Treatment.

16. Sometime in 1997 -- 1998 a bridge loan ($350K payable in 9 months) was secured by Advanced Biotech Products Inc and Dale to develop a way to manufacture a concentrated lycopene product. When Dale failed to perform due diligence, the project went awry. December 1999, with upwards of $1 million in debt, Advanced Biotech Products, Inc filed bankruptcy. The company that filed for bankruptcy was Advanced Biotech Products, Inc., EIN 77-0199568.

17. In January 2000, Advanced Biotech LLC was formed with Mohammed Piraiegar, a friend of Dale's, as the signing member.

18. With income short after bankruptcy, Dale became an employee of BioWorld Products LLC and was on payroll from 2002 – 2007.  During most of the time after 2002, Dale was not able to work because of injury he suffered. Specifically, on May 9, 2002, Dale was injured while delivering product to a customer. Dale filed a Workers Compensation claim against BioWorld

Products LLC as an employee (WCAB Case No. ADJ2127103.) Dale began receiving medical expense reimbursements

19. On December 15, 2007, an Agreement Transmuting Character of Personal Property was signed by Dale Barnes and Diane. In that agreement, Dale agreed that 100% ownership interest and business conducted by Diane under the trade name BioWorld Products was transmuted from community property to the separate personal property of Diane Barnes. The purpose of signing this agreement was to make it clear for the purpose of his Workers Compensation case that Dale had no interest in BioWorld Products in any way. The concern was that if he had an interest, then he might be denied Workers Compensation benefits. From the date of his injury in 2002, Dale was disabled. He represented to Workers Compensation in his claim that he was unable to work. Often, he would remain in bed all day in a fetal position because of his hernia.

20. Following Advanced Biotech Products, Inc.'s bankruptcy in 2000 up to early 2014, business expenses such as rent, electricity, phones, internet, and marketing for Advanced Biotech LLC were paid by BioWorld Products LLC to keep Advanced Biotech LLC going for Dale. From 2003 -- 2011, rent payments alone paid by BioWorld Products LLC for Advanced Biotech LLC totaled $128,960. BioWorld Products LLC made other payments on behalf of Advanced BioTech LLC. For example, from May 2007 to November 2007, BioWorld Products LLC paid $10,500 to Fresno State for a Multifix trial designed to benefit Advanced Biotech LLC.

21. On January 20, 2010, BioWorld Products LLC incorporated to become BioWorld Products, Inc. and received a Certificate of Good Standing from the State of California.

22. On April 19, 2011, BioWorld Products obtained a federal trademark with respect to the trademark "BioWorld Products" with the knowledge of ABT. On October 30, 2013, Dianne Barnes assigned the federal trademark to her

son Phillip Barnes. Dianne Barnes and BioWorld Products, Inc. continued to use the "BioWorld Products" trademark under an oral license from her son.

23. On June 20, 2013, a Partnership Agreement between Advanced Biotech and BioWorld Products, Inc. was signed by Dale to outline the roles of both companies. During this period, Dale was essentially unable to work and BioWorld Products, Inc. was running his business. On November 5, 2013, a second Partnership Agreement between Advanced Biotech LLC and BioWorld Products Inc. was signed by Diane.

24. In May 2014 BioWorld Products Inc moved to its new location at 6734 West Pershing Ave and continued to conduct business with Diane Barnes as President and Don Damschen as Vice President.

25. In June 2013 and November 2013, two partnership agreements were signed by the Advanced BioTech LLC and BioWorld Products, Inc. to reflect the fact that Diane was essentially running both companies. Under the agreement, BioWorld Products, Inc. promised to supply inventory, deliver product, bill and collect, and manage bookkeeping, while Advanced BioTech LLC promised to, inter alia, generate new sales.  In the November 2013 Agreement, Advanced BioTech was to be paid a commission for sales.

26. On September 15, 2014, BioWorld USA Inc incorporated with Don Damschen as CEO. While operating BioWorld USA, Mr. Damschen continued to be employed by BioWorld Products Inc., servicing existing customers, generating new customers, and selling BioWorld products. Diane was aware of the incorporation and approved it on behalf of BioWorld Products, Inc.  BioWorld USA, Inc. used the "BioWorld" trademark under an oral license from Diane Barns and Phillip Barnes

27. On February 13, 2015, BioWorld USA Inc received a fertilizer materials license from the State of California, Department of Food and Agriculture (CDFA). On October 13, 2015, BioWorld USA Inc received a certificate of

registration from CDFA for Micro Enhancer Plus, its first product, and approval to sell and distribute the agricultural product in California.

28. On September 1, 2016, an Asset Purchase Agreement between BioWorld Products Inc and BioWorld USA Inc was signed. BioWorld USA acquired all the assets of BioWorld Products including customer lists, contract agreements, trademarks, product formulations and intellectual property.

29. On October 29, 2016 BioWorld Products, Inc filed for bankruptcy as a result of the serious debt load accumulated by working in business with Advanced Biotech LLC and Dale Barnes. Advanced Biotech LLC received $17K in the disbursement from the bankruptcy disbursement, which assets were obtained from the sale made under the Asset Purchase Agreement.

30. On December 10, 2017, Diane filed for Dissolution of Marriage from Dale Barnes. Dale and Diane agreed that Diane would keep everything associated with BioWorld Products and Dale would keep everything associated with Advanced Biotech LLC.

31. ABTech have used the "BioWorld" and "BioWorld Products" trademark in marketing their products in areas where BWUSA has previously marketed products under those marks without the permission of BWUSA. In April 2016, BioWorld Products, Inc. advised ABTech that they were no longer authorized to represent BioWorld Products, Inc. or to use refer to BioWorld product lines on their website.  In February 2017, BWUSA's attorney to cease and desist from using the BioWorld trademark. However, ABTech continued to use the BioWorld trademark on its website and in its advertising and business dealings and continues to do so to the present time.

32. The mark "BioWorld" and "BioWorld Products" have acquired a secondary meaning associating specific products with BWUSA or its predecessors as the source of those products. As a result of ABTech's conduct, customers have become confused about their origin of these products and have been

misled about the source of the products and BWUSA's trademark has been diluted with respect to its serving as a marker of source of the products.

33. In or about 2018, the United States Patent and Trademark Office ("PTO") cancelled Phillip Barnes federal trademark in "BioWorld Products" on the grounds that he had failed to timely file a "Section 8 affidavit" concerning continued use of the trademark. After this cancellation, ABT filed a federal trademark application for "BioWorld" which BWUSA opposed. In November 2020, the PTO denied BWUSA's opposition on the grounds, inter alia, that BWUSA had not shown priority before 2014 in that BWUSA had not shown that it had acquired Phillip Barnes' common law rights in the BioWorld trademark, which it held had been transferred from Dianne Barnes to Phillip Barnes as part of the assignment of the federal trademark. Accordingly, in November 2020, BWUSA obtained a license from Phillip Barnes to use the BioWorld and BioWorld Product trademarks under his common law, state and federal rights. A true and correct copy of the license is attached hereto as Exhibit A. BWUSA is informed and believes and thereon alleges that Dianne Barnes and/or Phillip Barnes acquired common law trademark rights in California and the other locations where BWUSA currently uses the relevant trademarks before the usage by ABT of those marks in those areas.

## First Cause of Action
## (Trademark Infringement)

34. BWUSA incorporates herein each and every allegation contained in paragraphs 1 through 33, inclusive, of the Counterclaim.

35. BWUSA is the common law owner of the trademark in "BioWorld" and "BioWorld Products" by virtue of having acquired such trademark, goodwill, business name and other assets from BioWorld Products, Inc. BioWorld Products, Inc. acquired the common law trademark by using these marks in constant and continuous use in advertising, marketing and sales of product

under such names and by acquiring the assets of BioWorld Products, LLC, which, in turn, acquired the common law trademarks in those names by using these marks in constant and continuous use in advertising, marketing and sales of product under such names.

36. ABTech has violated BWUSA's trademark by using it for marketing, advertising and invoicing without BWUSA's permission in a way that confuses customers, potential customers, and the public generally, undermines the value of BWUSA's trademark, goodwill and business value, and violates BWUSA's exclusive right to use the trademark.

37. BWUSA is informed and believes that ABTech's violation has caused BWUSA to suffer pecuniary damages from lost sales due to confused customers, potential customers, and the public generally, and from the dilution of the value of BWUSA's business value.

38. As a proximate result of ABTech's conduct, BWUSA has been damaged in an amount which will be proven at trial.

39. ABTech's use of BWUSA's trademarks creates a likelihood that plaintiff's customers, potential customers, and the public generally will be confused or misled as to the source of goods or services in that they are likely to believe that ABTech's business is identical to or affiliated with that of BWUSA. ABTech threaten to and unless restrained will continue to use the trade name "BioWorld" and "BioWorld Products," as a result of which the public generally will be misled and deceived into believing that ABTech's business is identical to or affiliated with that of BWUSA, all to the irreparable injury of plaintiff's business and goodwill and to the unjust enrichment of defendant. Plaintiff has no adequate remedy at law in that it is extremely difficult to ascertain the amount of damages to plaintiff's business and goodwill and that BWUSA's property interest is unique and irreplaceable.

## Second Cause of Action

### Unfair Competition

40. BWUSA incorporates herein each and every allegation contained in paragraphs 1 through 39, inclusive, of the Counterclaim.

41. Business and Professions Code §17200 defines "unfair competition" as meaning "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

42. ABTech has engaged in unfair competition as defined by Business and Professions Code §17200 by using BWUSA's trademark for marketing, advertising and invoicing without BWUSA's permission in a way that confuses customers, potential customers, and the public generally, undermines the value of BWUSA's trademark, goodwill and business value, and violates BWUSA's exclusive right to use the trademark.

43. ABTech's use of BWUSA's trademarks creates a likelihood that plaintiff's customers, potential customers, and the public generally will be confused or misled as to the source of goods or services in that they are likely to believe that ABTech's business is identical to or affiliated with that of BWUSA. ABTech threaten to and unless restrained will continue to use the trade name "BioWorld" and "BioWorld Products," as a result of which the public generally will be misled and deceived into believing that ABTech's business is identical to or affiliated with that of BWUSA, all to the irreparable injury of plaintiff's business and goodwill and to the unjust enrichment of defendant. Plaintiff has no adequate remedy at law in that it is extremely difficult to ascertain the amount of damages to plaintiff's business and goodwill and that BWUSA's property interest is unique and irreplaceable.

44. ABTech has profited from the use of BWUSA's trademark in an amount to be proven at trial.

## JURY DEMAND

Counterclaim-Plaintiff demands a jury trial.

WHEREFORE, Defendants pray for judgment against Plaintiffs on its Counterclaim as follows:

1. That BWUSA recover compensatory damages according to proof;
2. That ABTech be required to disgorge to BWUSA any profits obtained by use of BWUSA's trademark;
3. For a permanent injunction, all enjoining defendants, and each of them, and his/her/their agents, servants, and employees, and all persons acting under, in concert with, or for him/her/them from: (a) Using the name "BioWorld" and/or BioWorld Products," (b) Otherwise infringing the trademark; (c) Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of defendant's goods;
4. For an order directing defendants, and each of them, to file with this Court and serve on plaintiff within 30 days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which defendants have complied with the injunction;
5. For an order requiring defendants, and each of them, to deliver up and destroy all infringing materials bearing the infringing designations;
6. For all of defendant's profits derived from its infringement of plaintiff's trademark; and
7. For such other and further relief as the Court may deem just and proper.

Peter Sean Bradley, Esq.

By: *Peter Sean Bradley*
Peter Sean Bradley
Attorney for Counterclaim-Plaintiff

BioWorld USA, Inc.'s First Amended Counterclaim