UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED BIOTECH, LLC, a California Limited Liability Company and DALE BARNES, a California Individual,<br><br>Plaintiffs,<br><br>v.<br><br>BIOWORLD USA, INC., a California corporation; DONALD DAMSCHEN, a California individual, and DIANE BARNES, a California individual,<br><br>Defendants.<br><br>AND RELATED CROSS-CLAIMS. | Case No. 1:19-cv-01215 JLT SKO<br><br>ORDER GRANTING COUNTER-DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. 26) |

Advanced BioTech LLC and Dale Barnes (collectively "Advanced BioTech") allege BioWorld USA, Inc., Donald Damschen, and Diane Barnes (collectively "BW USA") misappropriated trade secrets related to products sold and customers serviced by their competing companies. (Doc. 1 at 49, 58.) BW USA asserts counterclaims against BioTech for common law trademark infringement and unfair competition in violation of state law for BioTech's use of the marks BIOWORLD and BIOWORLD PRODUCTS. (*See generally* Doc. 25.)

BioTech seeks dismissal of the counterclaims, arguing BW USA had no valid ownership rights to the asserted trademarks and BioTech holds the federal registrations to these marks.

1

1  (Docs. 26, 27.) BW USA opposes the motion, asserting it has superior common law rights to
2  BioTech's newly registered trademarks. (Doc. 31.) The Court finds the matter suitable for
3  decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g)
4  and General Order 618. For the reasons set forth below, the motion to dismiss is **GRANTED** and
5  the counterclaims are **DISMISSED** with leave to amend.

6  **I.   BACKGROUND**

7  Over the past three decades, Diane Barnes and Dale Barnes formed various business
8  entities to sell fertilizers and bioremediation goods. (Doc. 25 at ¶¶ 6-28; Doc. 27 at 5.) According
9  to the counterclaims, Diane first started using the "BioWorld" name with her company BioWorld
10 Products in 1991. (Doc. 25 at ¶ 9.) In 1992, Diane obtained a California trademark for "BioWorld
11 Products." (*Id.* at ¶¶ 12.) Diane subsequently formed BioWorld Products LLC and BioWorld
12 Products, Inc., which also operated in the fertilizer and bioremediation industry. (*Id.* at ¶ 11.) In
13 2011, BioWorld Products, Inc. obtained a federal trademark for BIOWORLD PRODUCTS. (*Id.*
14 at ¶ 22.) On October 30, 2013, Diane, on behalf of herself and her business entities, assigned all
15 trademark rights to Phillip Barnes, her son. (*Id.*) The following year, Don Damschen, the
16 Barneses' business partner, incorporated BioWorld USA Inc. (*Id.* at ¶ 26.) On September 1, 2016,
17 BioWorld USA Inc. purchased all assets from BioWorld Products, Inc. (*Id.* at ¶ 28.) BioWorld
18 Products, Inc. subsequently filed for bankruptcy. (*Id.* at ¶ 29.)

19 During approximately the same time frame, Dale Barnes operated two business entities in
20 the same industry as Diane's businesses. (Doc. 25 at ¶¶ 8, 16-20.) Dale formed Advanced
21 BioTech Products Inc. in 1989. (*Id.* at ¶ 8.) After Advanced BioTech Products Inc. filed for
22 bankruptcy, Dale formed Advanced BioTech LLC in 2000. (*Id.* at ¶¶ 16-17.) For roughly fifteen
23 years, Advanced BioTech LLC and BioWorld Products, Inc. operated in tandem and as partners.
24 (*Id.* at ¶ 25.) The Dale and Diane's working relationship deteriorated, alongside their marriage,
25 and they filed for divorce in December 2017. (*Id.* at ¶ 30.)

26 In 2018, the United States Patent and Trademark Office cancelled Phillip Barnes's
27 registration for BIOWORLD PRODUCTS because he failed to file a Section 8 affidavit showing
28 continued use of the mark. (Doc. 25 at ¶ 33.) After the USPTO cancelled the mark, Advanced

1  BioTech LLC obtained federal registration for BIOWORLD PRODUCTS (No. 5,712,872). (Doc.
2  27 at 5; Doc. 28 at 4.) Advanced BioTech LLC later filed an application for the BIOWORLD
3  mark (No. 6,274,854). (Doc. 34-1.) BioWorld USA, Inc. opposed registration of the BIOWORLD
4  mark at the Trademark Trial and Appeal Board. (Doc. 31 at 6-7.) The TTAB conducted a review
5  of the arguments and evidence provided by the parties and ultimately, dismissed BioWorld USA,
6  Inc.'s opposition. (Doc. 28-1 at 7-38.) BioWorld USA, Inc. then filed a request to cancel the
7  BIOWORLD PRODUCTS mark, which the TTAB likewise dismissed. (Doc. 40-1.)
8      During adjudication at the TTAB, Advanced BioTech LLC and Dale Barnes initiated this
9  action for misappropriation of trade secrets on August 30, 2019. (*See generally* Doc. 1.) BioTech
10 asserts BioWorld USA, Inc., Don Damschen, and Diane Barnes improperly obtained and used
11 proprietary, secret business information, including, for example, its fertilization formulas and
12 customer lists. (*Id.* at ¶ 20.) BW USA counterclaimed for trademark infringement of the
13 BIOWORLD marks,[1] under California common law and unfair competition under California
14 Business and Professional Code § 17200. (Doc. 21 [original answer and counterclaims]; Doc. 25
15 [amended counterclaims].)
16     On December 21, 2020, BioTech moved to dismiss the counterclaims, arguing BW USA
17 does not have any common law rights to the BIOWORLD marks that are superior to its federally
18 registered marks. (Doc. 27.) BW USA filed its opposition to the motion on January 12, 2021
19 (Doc. 31) to which BioTech filed a reply on January 19, 2021 (Doc. 32). In addition, BioTech
20 filed a supplemental request for judicial notice on March 29, 2021. (Doc. 34.)

## II.   MOTION TO DISMISS

22 A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d
23 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the
24 complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
25 *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule

---

[1] Although BioTech holds two separate trademark registrations, both marks contain the same distinctive word "BioWorld." (Doc. 27 at 9.) The issues presented on the motion to dismiss apply similarly to both marks, and therefore, the Court addresses them collectively.

3

12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

The Supreme Court held: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.   EVIDENTIARY CHALLENGES

With its opposition to the motion to dismiss, BW USA submitted an "Assignment of Intellectual Property Rights" between Phillip Barnes and BioWorld USA, (Doc. 31-1.) which allegedly assigns all common law rights of the BIOWORLD marks to BW USA. (Doc. 31 at 6.) BW USA did not submit the assignment with its original or amended counterclaims. In fact, the Assignment is dated January 12, 2021, the same day BW USA filed its opposition brief. (Doc. 31-1 at 4.) BioTech contends the January 2021 Assignment is not properly before the Court. (Doc. 32

4

at 6-7.) As a general rule, courts "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Parties may introduce evidence outside the pleadings under two exceptions: "the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

A.   **Incorporation by Reference**

The incorporation-by-reference doctrine permits courts to consider documents not attached to the complaint but on which the complaint "necessarily relies." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). The complaint "necessarily relies" the unattached evidence if it meets all three elements: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).

The January 2021 Assignment is arguably central to BW USA's claim, because ownership of a trademark may provide a basis for an infringement claim. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1072 (9th Cir. 2014) ("a claim for trademark infringement requires only two elements: (1) ownership of a trademark," and (2) a likelihood of confusion.). However, BW USA's original and amended pleadings of the counterclaims make no reference to this Assignment. Indeed, the January 2021 Assignment did not exist when BW USA filed its counterclaims, illustrated by its execution date of more than a month after BW USA filed the amended counterclaims. (Doc. 31-1 at 5.) BioTech raised doubts regarding the Assignment's authenticity because its execution date occurred simultaneously with the filing of BW USA's opposition brief. (Doc. 32 at 6.) BioTech further questions its authenticity given the Assignment's similarity in format and substance to the November 2020 license, which "bears an identical electronic signature" by Phillip Barnes. (*Id.* at 6-7.) Consequently, the January 2021 Assignment fails to satisfy all necessary requirements to be incorporated by reference.

B.   **Judicial Notice**

Under Rule 201, a court may take judicial notice of "a fact that is not subject to reasonable dispute" because it is generally known or "can be accurately and readily determined" from

indisputably reliable sources. Fed. R. Evid. 201. Typically, facts for which parties have "varying interpretations, and [] reasonable dispute as to what [the document] establishes" should not be judicially noticed. *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011).

BW USA did not request the Court take judicial notice of the January 2021 Assignment. Nevertheless, the Court notes BioTech's concerns regarding the authenticity of the January 2021 Assignment suggest its accuracy cannot be readily determined. BioTech further argues the document "amounts to an invalid attempt to transfer" Phillip Barnes's trademark rights, rendering the facts in the assignment subject to a reasonable dispute. (*See* Doc. 32 at 7.) Accordingly, judicial notice is inappropriate.

**C.   Conclusion**

The January 2021 Assignment goes beyond the pleadings and will not be considered in evaluating the motion to dismiss. *See Stanley v. Bobo Constr., Inc.*, 2014 WL 1400957, *2 (E.D. Cal. Apr. 10, 2014) (sustaining objection to declaration submitted with an opposition to motion to dismiss because plaintiff did not attach it to the complaint or request judicial notice).

### IV.   DISCUSSION

BioTech argues that BW USA failed to state a claim for trademark infringement or unfair competition because it owns a federal registration for the BIOWORLD mark, which accords a presumption of priority. (Doc. 27 at 8-10.) BioTech argues BW USA cannot show prior commercial use because BW USA's license did not transfer common law rights. (Doc. 27 at 10-13.) BioTech also contends that TTAB decisions preclude BW USA from arguing its own prior use or status as a licensee establish common law rights. (Doc. 32 at 7-10.) BW USA twice argued before the TTAB that it had sufficient commercial use of the marks to predate BioTech's claimed priority date. (Doc. 28-1 at 7-38; Doc. 40-1.) BW USA's counterclaims constitute a third attempt to establish priority.

In the counterclaims, BW USA alleges that it holds superior common law ownership, derived from Diane Barnes's continuous use of the mark by her various business entities and from its license by Phillip Barnes to use the mark. (Doc. 25 at ¶¶ 11, 33.) In opposition to the motion to dismiss, BW USA primarily relies on its new status as an *assignee* of the rights held by Phillip

6

Barnes, rather than as a licensee. (Doc. 31.) As previously explained, however, the Court cannot consider the January 2021 Assignment or any corresponding arguments on the motion to dismiss. The Court evaluates BW USA's arguments to the extent they pertain to its rights as a licensee.

**A.     Common Law Trademark Rights Can Provide Superior Rights**

BioTech argues BW USA cannot claim ownership rights in the BIOWORLD marks because BioTech holds federal registration for the marks. (Doc. 27 at 8.) BioTech contends its registrations constitute *prima facie* evidence of ownership and exclusive rights to use the marks. (*Id.* at 8-9.) Although holders of federally registered trademarks have a presumption of ownership and priority, a party may rebut this presumption if it can show commercial use of the mark that predates the registration. *Stone Creek, Inc. v. Omnio Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017); J. McCarthy, *Trademarks and Unfair Competition* § 16:18.5 (5th ed. 2022). A senior user can establish superior common law rights to the trademark over the federal registration if it has "legally sufficient market penetration" in a certain geographic market. *Credit One Corp. v. Credit One Fin., Inc.* 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009).[2]

BW USA does not dispute that BioTech holds federal registrations for the BIOWORLD marks. (Doc. 31 at 5.) BW USA alleges that it holds superior common law rights because Diane Barnes continuously used the mark, beginning in 1991, in connection with her several business entities (i.e., BioWorld Products, LLC; BioWorld Products, Inc.; and BioWorld USA, Inc.). (Doc. 25 at ¶ 11.) Continuous use of the marks for approximately seventeen years before BioTech's registration could establish legally sufficient market penetration. *Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*, 2019 WL 3766654, at *3 (S.D. Cal. Aug. 9, 2019) (finding approximately five years of alleged continuous use of a mark to sell products across the United States "plausibly pled market penetration"). Therefore, whether BW USA can maintain a cause of action for common law infringement depends on whether the TTAB decisions preclude BW USA from relying on its own use and that of its predecessor entities.

---

[2] BW USA's counterclaims arise under California common law, which follows the standards under the Lanham Act for determining the superior rights holder. (*Id.* at ¶ 33); *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004) ("As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis.").

**B.      Preclusive Effect of TTAB Decisions on BW USA's Infringement Claim**

Issue preclusion, or collateral estoppel, prevents parties from relitigating issues that another court previously decided. *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). Under the doctrine of issue preclusion, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (internal quotations omitted). Courts distilled three conjunctive elements, all of which must be met, for issue preclusion to bar re-litigation of an issue: (1) the issue "necessarily decided" in the prior action is identical to the subsequent issue; (2) a final judgment on the merits resulted in the prior action; (3) the same parties, or parties in privity, litigated in the prior and subsequent actions. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1021 (9th Cir. 2012).

The doctrine of issue preclusion applies not only to final judgments issued by other courts but also to administrative decisions when the agency acts "in a judicial capacity and resolves disputed issues of fact properly before it" and where the parties had an adequate opportunity to litigate those issues. *B&B Hardware*, 575 U.S. at 148. Notably, TTAB decisions regarding oppositions to trademark registration carry preclusive effect because parties have a strong reason to "take the matter seriously" given the substantial benefits accorded with federal trademark registration. *Id.* at 159. The Supreme Court explained, "[s]o long as the other ordinary elements of issue preclusion are met, when the usages adjudicated by the TTAB are materially the same as those before the district court, issue preclusion should apply." *Id.* at 160; *see also V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542 (2019) (dictum) ("To the extent a party before the TTAB litigates an issue that also arises in infringement proceedings before a federal district court, issue preclusion would bar relitigation.")

1. <u>TTAB's Prior Determinations Regarding the BIOWORLD marks</u>

The TTAB issued two prior decisions related to BW USA's infringement claims.[3] First,

---

[3] BioTech requests the Court take judicial notice of the TTAB opinions and filings. (Doc. 27 at 5, n.1.) BW USA did not oppose this request.  The Court may take judicial notice of matters of the public recording, including decisions

8

on November 2, 2020, the TTAB issued an opinion on BW USA's opposition to the registration of the BIOWORLD PRODUCTS mark. (Doc. 28 at 7-38.) BW USA challenged registration of the mark on the grounds of priority and likelihood of confusion based on its alleged own prior use at common law and Phillip Barnes's previously registered mark of the BIOWORLD PRODUCTS mark. (*Id.* at 8.) The evidence before the TTAB included pleadings and briefing by the parties, as well as various declarations and exhibits to support the parties' contentions. (*Id.* at 10.) In its final decision, the TTAB made several findings related to BW USA's current infringement claims. The TTAB found that Diane Barnes validly assigned to Phillip Barnes all common law and federal rights to the registered BIOWORLD PRODUCTS mark in 2013 as a wedding gift. (*Id.* at 23-24, 33-35.) Because Diane assigned the mark to Phillip in 2013, BW USA did not obtain ownership rights through the asset purchase agreement with BioWorld Products, Inc. in 2016. (*Id.*) Phillip Barnes lost his federal trademark rights in 2018 when the USPTO cancelled his registration for failure to demonstrate continued use of the mark. (*Id.* at 24.) Therefore, to determine if BW USA had priority to the BIOWORLD mark, the TTAB only considered whether BW USA's own commercial use of the mark established common law rights predating BioTech's application. (*Id.* at 35.) The TTAB concluded that BW USA had not made a sufficient showing to satisfy a consistent commercial use that predated BioTech's application. (*Id.* at 35-37.)

Second, on August 17, 2021, the TTAB issued a decision dismissing BW USA's petition to cancel BioTech's registration for the BIOWORLD PRODUCTS mark. (Doc. 40-1.) In the cancellation petition and corresponding briefing, BW USA argued it had proprietary rights because it "obtained an exclusive license to use the mark from Phillip Barnes in November 2020." (*Id.* at 7.) BW USA argued that it could assert Phillip Barnes' common law rights as the exclusive licensee. (*Id.*) The TTAB concluded BW USA failed to state a claim for cancellation on this basis because a "licensee cannot plead or claim priority based on the licensor's use of the licensed mark." (*Id.,* citing *Moreno v. Pro Boxing Supplies, Inc.*, 124 USPQ2d 1028, 1036

---

issued by administrative agencies. *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 924 n.3 (9th Cir. 2002). The Court, therefore, grants the request to take judicial notice of the two TTAB opinions submitted by BioTech (Doc. 28 at 7-38; Doc. 40-1.)

(TTAB 2017).) The TTAB granted BW USA leave to amend its petition to cure the defects, but BW USA failed to do so. (*Id.* at 12-13, 17.) Accordingly, the action to cancel BioTech's trademark was dismissed with prejudice. (*Id.* at 17.)

      2.   <u>TTAB November 2020 Decision Precludes Reliance on BW USA Own Prior Use</u>

          a.   *Same Issue Necessarily Decided by TTAB*

The first element of issue preclusion requires the prior proceeding to have "necessarily decided" an identical issue to the one raised in the subsequent action. *Skilstaf*, 669 F.3d at 1021. "Preclusive force attaches only to issues that were necessary to support the judgment of the prior action," but it does not apply issues that were merely incidental to the prior outcome. *Pool Water Prds. v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001). To determine whether the issues are identical, courts typically weigh four factors: (1) a substantial overlap between the evidence or argument in the proceedings; (2) whether any new evidence or argument involves the same application of law; (3) whether pretrial and discovery from the first matter could have reasonably embraced the matter presented in the second action; and (4) the relatedness of the claims. *Alberto-Culver Co. v. Trevive, Inc.*, 199 F. Supp. 2d 1004, 1008 (C.D. Cal. 2002).

The November 2020 TTAB proceeding involved a substantial overlap in argument and application of law regarding BW USA's own prior use of the marks. In BW USA's opposition to register the BIOWORLD PRODUCTS mark, it argued that its own prior use and that of its predecessor business entities (i.e., BioWorld Products LLC and BioWorld Products, Inc.) established superior common law rights. (Doc. 28-1 at 8.) In the matter now before the Court, BW USA again argues it has used the mark since 1991, relying on the predecessor entities and its own use of the mark after the asset purchase agreement in 2016. (Doc. 25 at ¶¶ 11-15, 28.) The TTAB held, however, that BW USA could not rely on the use of any predecessor companies owned by Diane Barnes because Diane had assigned the "full rights to the trademark 'BioWorld Products'" to Phillip Barnes prior to the asset purchase agreement. (Doc. 28 at 34.) The TTAB presumed the assignment included "full rights" because a "naked transfer of the mark" without the goodwill of the business to which the mark pertains would be invalid. (*Id.* (quoting *Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank*, 696 F.2d 1371, 1375 (Fed. Cir. 1982).) The TTAB

concluded that "BioWorld Products, Inc. had no ownership rights in the mark BIOWORLD PRODUCTS to transfer to [BW USA]" through the asset purchase agreement, a fact that BW USA does not dispute in the current matter. (*Id.* at 35; Doc. 31 at 11-12.) The TTAB November 2020 decision addressing whether BW USA could claim priority to the BIOWORLD mark, necessarily depended on whether BW USA *itself* had sufficiently used the mark in commerce, such that its common law rights received priority to BioTech's application for federal registration. (*Id.*) As a result, arguments that BW USA raises regarding its own prior use of the mark overlap with the arguments it made to the TTAB. *See Anstalt v. Bacardi & Co.*, 2016 WL 7635955, at *3 (C.D. Cal. Nov. 16, 2016) (staying the case pending outcome of TTAB proceedings where the parties disputed likelihood of confusion and validity of ownership because the issues were "central" to the trademark infringement claims).

In addition, BW USA had an opportunity to submit evidence to establish its own use of the mark in the TTAB proceeding. BW USA submitted copies of advertisements purportedly showing the nature and extent of its marketed products. (Doc. 28 at 35-36.) BW USA provided no context about the extent or time of distribution of these materials. (*Id.*) In contrast, BioTech submitted 39 invoices from 2014 to 2020, which detailed how it used the mark in commerce with its goods. (*Id.* at 36 n.76.) The TTAB concluded BW USA's evidence did not establish prior and continuous use in the marketplace to corroborate the claimed common law rights. (*Id.* at 36-38.)

Finally, BW USA's claims opposing the registration of BIOWORLD PRODUCTS relate to its infringement counterclaim. To maintain a cause of action for trademark infringement, BW USA must show it has priority to the asserted marks and BioTech's use of those marks creates a likelihood of confusion. *See Wells Fargo & Co*, 758 F.3d at 1072. Likewise, to maintain an opposition to federal registration, BW USA asserted likelihood of confusion with a mark to which it allegedly has superior rights. (*See* Doc. 28 at 8); *see also B&B Hardware*, 575 U.S. at 144. Therefore, BW USA's infringement claim closely relates to its prior challenge to the registration of the BIOWORLD PRODUCTS mark. *See Synoptek, LLC v. Synaptek Corp.*, 2018 WL 3359017, *4 (C.D. Cal. June 4, 2018) (finding TTAB's ruling on likelihood of confusion in cancellation proceedings had preclusive effect on whether a likelihood of confusion existed in the

infringement claim). These factors illustrate how the TTAB November 2020 already addressed the issue as to whether BW USA own use constitutes sufficient market use to preempt BioTech's federal rights, an issue identical to one raised by the counterclaim.

        *b.*       *Final Judgment on the Merits*

Under the second element of issue preclusion, the prior proceeding must have concluded with a final judgment on the merits. *Skilstaf*, 669 F.3d at 1021. A final judgment must be "sufficiently firm to be accorded conclusive effect." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988) (internal quotations omitted). To determine whether a judgment is sufficiently firm, courts consider: whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or was reviewed on appeal. *Luben Inds. Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983). Decisions from the TTAB in opposition proceedings generally, and in this case, satisfy these factors.

Opposition proceedings before the TTAB follow similar procedures as a federal court because the Federal Rules of Civil Procedure and Evidence apply. *B&B Hardware*, 575 U.S. at 138. "The TTAB also allows discovery and depositions." *Id.* Although the TTAB does not hear live testimony, parties may submit "transcribed testimony, taken under oath and subject to cross-examination, and [may] request oral argument." *Id.* These elements provide an opportunity for parties to be fully heard and provide a well-reasoned basis to support the TTAB decisions.

BW USA had an opportunity to be fully heard on whether it had sufficient commercial activity to establish superior common law rights to the BIOWORLD marks, and the TTAB came to a well-reasoned decision. BW USA submitted declarations of Diane Barnes, Don Damschen, and Peter Bradley; invoices of BW USA's predecessor entities; and marketing materials used by the company. (Doc. 28 at 10, 35-36.) The TTAB reviewed the evidence and arguments in BW USA brief and reasoned that it did not show consistent, sufficient use in the market. (*Id.*) BW USA did not explain to whom or when the materials were distributed, undercutting the ability of the evidence to show use prior to BioTech's application date. (*Id.*) The TTAB logically evaluated the evidence BW USA submitted in forming its reasoned conclusion.

As to the third factor, TTAB decisions are subject to an appeals process, including review

in federal court. 15 U.S.C. § 1071. For example, a party may seek review of the TTAB's cancellation decision, which would place the action "outside of the 'ordinary' circumstances that may confer preclusive effect on TTAB rulings." *Franchising v. Starcycle Franchise*, 2020 WL 3840442, *3, n. 4 (C.D. Cal. Mar. 27, 2020). BW USA, however, did not exercise any option to review or appeal the TTAB's November 2020 decision. (Doc. 32 at 9.) Accordingly, the Court finds the TTAB November 2020 decision resulted in a final judgment on the merits.

      *c.*    *Same Parties*

The final element of the issue preclusion analysis considers whether the party against whom issues preclusion is asserted also litigated in the prior proceeding. *Robi*, 838 F.2d at 326. There is no question that BW USA also brought the challenges against BioTech in both the TTAB Opposition and the TTAB Cancellation proceeding. (*See* Doc. 25 at ¶ 33.) With all three elements of issue preclusion met, the Court finds the TTAB November 2020 decision precludes BW USA from arguing its own prior use establishes common law rights.

    3.   <u>TTAB August 2021 Decision Precludes BW USA from Relying on its Licensee Status to Establish Common Law Rights</u>

The TTAB August 2021 decision further precludes BW USA from asserting common law rights to the BIOWORLD marks based on its status as a licensee. In both its petition for cancellation of the mark before the TTAB and in its current counterclaim, BW USA argues its written license executed in November 2020 allows it to "step into the shoes" of Phillip Barnes, as the owner of the marks. (Doc. 40-1 at 7; Doc. 31 at 8-9.) Specifically, BW USA argued to the TTAB that it was "asserting Phillip Barnes' rights" because it obtained an "exclusive license" to use the mark in November 2020. (Doc. 40-1 at 7.) BW USA likewise provided the Court with the November 2020 license to support its argument that it holds superior rights to the BIOWORLD marks over BioTech. (Doc. 25 at ¶ 33.) However, the TTAB held that BW USA, as a licensee of Phillip Barnes, could not claim priority based on Phillip's use of the BIOWORLD marks. (*Id.*) (citing *Moreno v. Pro Boxing Supplies, Inc.*, 124 USPQ2d 1028, 1036 (TTAB 2017).) A "licensee cannot rely upon the owner-licensor's date of first use in order to establish priority over a third party." *McCarthy*, at § 16:5. Given the overlap in arguments, evidence, and application of law,

13

BW USA raised an identical issue before the TTAB. Moreover, as discussed with respect to TTAB oppositions proceedings, cancellation proceedings likewise present claims significantly related to trademark infringement claims. BW USA's basis for cancellation of the BIOWORLD mark rested on its claim of priority and likelihood of confusion. (Doc. 40-1 at 6-7); *see also Branded, LLC v. Vans, Inc.*, 2020 WL 8385656, *3-4 (C.D. Cal. Dec. 7, 2020) (issuing a stay pending the outcome of a cancellation action because if the TTAB found defendant had priority to the asserted marks, it would have preclusive effect on the infringement action). Therefore, the TTAB August 2021 decision meets step one of the issue preclusion analysis.

For similar reasons discussed above with respect to the November 2020 TTAB decision, the remaining two elements are also met. The November 2020 TTAB proceeding gave the parties a full opportunity to be heard on the merits of the case and formed a well-reasoned conclusion because it follows similar procedures as those in district courts. *See B&B Hardware*, 575 U.S. at 138. Although the TTAB's decision in August 2021 occurred at the motion to dismiss stage, and presumably involved a less detailed factual record than in the TTAB November 2020 decision, BW USA again failed to take advantage of the appeals process. (Doc. 40-1 at 2, 17.) The TTAB August 2021 decision granted BW USA the opportunity to amend its complaint, but BW USA allowed the deadline to lapse. (*Id.* at 17.) Consequently, the TTAB dismissed the cancellation proceeding with prejudice, binding the parties to its conclusions. (*Id.*)

Finally, the parties litigating these actions are the same. Having found all three elements of the issue preclusion doctrine met, the TTAB August 2021 decision precludes BW USA from arguing that it has any proprietary common law rights to the BIOWORLD marks as a licensee.

4. Conclusion

Because the TTAB decisions preclude BW USA from arguing that it has common law rights to the BIOWORLD mark based either on its own use of the mark or as a licensee of Phillip Barnes, BW USA's counterclaim does not otherwise set forth a set of facts upon which the Court could find trademark infringement. Accordingly, the Court dismisses BW USA's counterclaim for common law trademark infringement.

### C. Unfair Competition

BioTech contends BW USA's claim for unfair competition fails because "liability rests on the same allegations as its trademark infringement claims" and therefore, rises and falls with the infringement cause of action. (Doc. 27 at 13.) BW USA disagrees and asserts its "cause of action for unfair competition is a different cause of action than one for trademark infringement." (Doc. 31 at 12.) BW USA relies on *Los Defensores, Inc. v. Gomez*, in which the court drew a distinction between the unfair competition claim that rested on "appropriation of another's *trade*" rather than "appropriation and use of another's trademark." 223 Cal.App.4th 377, 396-397 (2014) (emphasis added). Unlike *Los Defensores*, BW USA did not distinguish between the type of appropriation that allegedly gives rise to its infringement claim versus its unfair competition claim. Instead, BW USA's arguments to support its unfair competition claim refer to the same assertions relied upon for its trademark claim—i.e., that it can stand in the shoes of Phillip Barnes as licensee (and now assignee) of the mark and these transfers of ownership were valid. (Doc. 31 at 13.)

Moreover, the Ninth Circuit held that unfair competition claims under California law "that sound in trademark" are subject to the same analysis as Lanham Act claims and California common law trademark claims. *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); *see also Grupo Gigange*, 391 F.3d at 1100 ("As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis."). Because BW USA's unfair competition claim rests on the same factual allegations and legal analysis as the trademark infringement claims, the Court likewise dismisses the second counterclaim for failure to state a claim.

### D. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could

1 not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks
2 omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment
3 would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party
4 acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).
5       BW USA requests leave to amend its counterclaims in light of the new assignment from
6 Phillip Barnes. (Doc. 31 at 10, n. 3.) BioTech argues BW USA has made clear it "possesses no
7 additional facts that can cure the defects." (Doc. 32 at 14.) BioTech further argues that amending
8 the counterclaims to include the January 2021 Assignment would not change the fact that BW
9 USA's date of incorporation occurred after BioTech began using the mark. (*Id.* at 10.) BioTech
10 did not explain how this would negate BW USA's priority claim as an assignee of Phillip Barnes'
11 ownership rights. *See McCarthy on Trademarks and Unfair Competition*, § 18:5 ("A valid
12 assignment forges a link in a chain of priority of use of the mark."). BioTech's remaining
13 arguments against the request to amend rely on factual deficiencies in the counterclaims. For
14 example, BioTech contends the assignment is invalid because BW USA did not allege it acquired
15 any commercial interests with the assignment, rendering the transfer invalid. (Doc. 32 at 12.)
16 However, amendment affords BW USA an opportunity to cure the alleged factual deficiencies.
17       Finally, BioTech urges the Court not to allow amendment because BW USA has already
18 made two attempts to fix its trademark counterclaims. Cognizant of BW USA's prior attempts to
19 establish priority to the BIOWORLD marks, BW USA will be granted **one final opportunity** to
20 amend its counterclaims. For the reasons explained above, BW USA may not reassert
21 infringement theories that rest on BW USA's own prior use or arise from its licensee status.

22                     **V.    ORDER**
23 For the reasons set forth above, the Court **ORDERS:**
24     1.     The motion to dismiss (Doc. 26) is **GRANTED.**
25     2.     BW USA **SHALL** file a Second Amended Counterclaim within forty-five days of
26           service of this order.
27 ///
28 ///

**Failure to timely file amended counterclaims may result in dismissal of such claims for failure to prosecute and failure to obey the Court's order.**

IT IS SO ORDERED.

Dated: __April 26, 2022__              _Jennifer L. Thurston_
                                       UNITED STATES DISTRICT JUDGE